UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARD JOHNSON,

        Petitioner,

vs.                                  Case No. 3:19-cv-145-BJD-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  INTRODUCTION

This cause is before the Court on Petitioner Bernard Johnson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).   He challenges his state court (Duval County) conviction for home invasion robbery.   Petition at 1.   Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 7).   Petitioner's Reply to State's Response (Reply) (Doc. 8) followed.   See Order (Doc. 6).

Petitioner raises seven grounds.   Grounds one - four, claims of ineffective assistance of trial counsel, are unexhausted in the state court system.   Grounds five and six, claims of ineffective assistance of trial counsel,

are exhausted.   Ground seven, a claim of ineffective assistance of appellate counsel, is exhausted.[1]

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."   Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

---

[1] Respondents filed an Appendix (Doc. 7).   The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.   Otherwise, the page number on the document will be referenced.   The Court will hereinafter refer to the Exhibits contained in the Appendix as "Ex."   For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.  <u>Martin</u>, 949 F.3d at 670 (quotation and citation omitted).  Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).  Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

The Eleventh Circuit recently opined that federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  <u>Lee v. GDCP Warden</u>, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).  Further, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits.  <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th

Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 2021 WL 1240954 (U.S. Apr. 5, 2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Indeed, relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.

This high hurdle is not easily surmounted; if the state court applied clearly established federal law to reasonably determined facts when

4

determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact, cert. denied, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 2021 WL 1240957 (U.S. Apr. 5, 2021).   To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895,   908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).   As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

Notably, a claim of ineffective assistance of appellate counsel is governed by this same standard <u>Strickland</u> standard.   <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020) (citing <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009)), <u>cert. denied</u>, 141 S. Ct. 1721 (2021).   As in a claim of ineffective assistance of trial counsel, failure to establish either prong of the <u>Strickland</u> standard is fatal to a claim of ineffective assistance of appellate counsel.   <u>Id</u>.

In applying the two-pronged standard established in <u>Strickland</u>, the Court is mindful that appellate counsel may weed out weaker, although meritorious arguments, as there is no duty under the Sixth Amendment to raise every non-frivolous issue.   <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016).   Regarding the prejudice prong, "[a]ppellate] [c]ounsel's performance will be deemed prejudicial if we find that the neglected claim would have a reasonable probability of success on appeal."   <u>Tuomi</u>, 980 F.3d at 795 (quoting <u>Philmore</u>, 575 F.3d at 1265) (internal quotation omitted).

Finally, the Eleventh Circuit warns:

> because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   <u>Harrington [v. Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any

reasonable   argument   that   counsel   satisfied
<u>Strickland</u>'s deferential standard." <u>Id</u>.

<u>Tuomi</u>, 980 F.3d at 795.

## V.   EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend grounds one - four are unexhausted and procedurally defaulted.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without

---

2  <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

3  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If cause is established, a petitioner must demonstrate prejudice.   To

demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

The record demonstrates that Petitioner did not raise grounds one – four in the state courts.   Therefore, these federal claims are unexhausted.   It is clear from state law that any future attempts at exhaustion of these grounds would be futile.   As such, Petitioner has procedurally defaulted these grounds for relief.

Petitioner did not have post-conviction counsel; "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that

proceeding was ineffective." <u>Martinez</u>, 566 U.S. at 17.   Petitioner relies on <u>Martinez</u> and asks that the default of grounds one - four be excused pursuant to <u>Martinez</u>.

Per <u>Martinez</u>, this Court must ask whether a petitioner has satisfied the standard for excusing a default.   Petitioner blames his failure to raise these grounds in his Rule 3.850 motion on the fact that he did not have counsel to help him file his motion.   To the extent Petitioner blames his failure to properly exhaust his claims of ineffective assistance of trial counsel on the fact that he did not have counsel to prepare his Rule 3.850 motion, this Court is not convinced the claims have some merit.

<u>Martinez</u> provides a narrow, equitable, non-constitutional exception to the holding in <u>Coleman</u>.   To the extent Petitioner claims his procedural default should be excused based on the narrow exception under <u>Martinez</u>, Petitioner must demonstrate the underlying ineffectiveness claim is substantial.   To meet this requirement, Petitioner must demonstrate the claim has some merit.   <u>Martinez</u>, 566 U.S. at 14.   In this instance, the underlying ineffectiveness claims raised in grounds one - four lack merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar.   To explain, the Court will provide a merits analysis for grounds one - four.

## VI.   GROUND ONE

**Ground One:   ineffective assistance of trial counsel for failure to object to the admission of video testimony of the DNA expert into evidence, resulting in a violation of the Confrontation Clause.**

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts.   As such, the claim is unexhausted and procedurally defaulted.   As noted above, Petitioner relies on <u>Martinez</u> and this Court will undergo a merits analysis for ground one.

In his Petition, Petitioner "first contends as soon as it became apparent that the State's expert witness did not test the Exhibits 7S through 7X and reference sample from Kelly Rita, defense counsel should have objected to the expert witness Murphy-Baum's recorded video testimony being introduced on grounds that it violates the Confrontation Clause."   Petition at 4.   Petitioner complains the DNA tests were "completed by a different analyst" and Ms. Murphy-Baum did not perform or observe the performance of the reported test. <u>Id</u>.

This claim has no merit.   The state filed a Motion to Perpetuate Testimony, seeking to perpetuate the testimony of Erin Murphy-Baum, the DNA analyst.   Ex. A at 83-84.   The state said she would testify as to the findings of her analysis.   <u>Id</u>. at 83.   Moreover, the defense had no objection to the motion.   <u>Id</u>.

At trial, defense counsel, Mr. Anthony D. Rosati, cross-examined Ms. Murphy-Baum.   Ex. G at 736-37.   Ms. Murphy-Baum confirmed on cross-examination that, after performing her analysis, she could not say there was a match to Petitioner.   Id. at 736.

The record shows Mr. Rosati stipulated that Ms. Murphy-Baum is an expert in the field of forensic DNA testing.   Ex. G at 717.   If fact, all counsel entered into the stipulation.   Id. at 717-718.   Ms. Murphy-Baum testified she works for Bode Technology as a DNA analyst.   Id. at 722.   As far as her duties, she processes samples for the case work department, analyzes data, and writes reports for the cases.   Id. at 723.   She explained, "I did the lab work for these samples with the exception of another analyst actually cut the swabs."   Id. at 727-28.   She stated she received the cuttings from another analyst in the lab and then Ms. Murphy-Baum extracted the DNA from the cuttings.   Id. at 729.   She amplified the clean DNA sample and generated a DNA profile.   Id. at 730.   In sum, she "extracted the DNA and obtained a profile."   Id.

Although Ms. Murphy-Baum did not perform the cutting, she received the cuttings, extracted the DNA, amplified it, and ultimately generated the DNA profile.   She also made the findings to which she attested.   Id. at 730-34.   Under these circumstances, counsel's performance was well within the

broad range of reasonable assistance under prevailing professional norms. Strickland.   Mr. Rosati's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.

This Court has opined:

> "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable.   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir.2000) (quoting Burger v. Kemp, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987)).   In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." Berghuis v. Thompkins, —— U.S. ——, 130 S. Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010) (quoting Strickland, 466 U.S. at 695).

Kuhns v. Sec'y Dep't of Corr., No. 2:08-cv-163-FtM-29SPC, 2011 WL 1085013, at *6 (M.D. Fla. Mar. 21, 2011) (not reported in F.Supp.2d).

The Court is not convinced that there was prejudice such that the result of the proceedings would have been different if counsel had acted as Petitioner claims he should have done.   In this case, the DNA testimony against Petitioner was not particularly strong.   Indeed, the expert testified there was no match.   Ex. G at 736.   More importantly, the testimony of Petitioner's co-

defendant, Jay Sowers, and others was much more damning.   Ms. Kelley Rita, the victim, testified that one of the intruders was a fairly tall, black male who had on a black ski mask and bright red nylon pants with pockets all down the side and a dark sweatshirt.   Ex. F at 415.   Leslie Nickels, a resident of Spinnaker Reach Apartments, saw a black male, wearing red slacks and a white tank top, going up the steps carrying items after seeing a dark-colored four-door car backed up to the apartment complex with the license plate covered.   Ex. G at 655-61.   The recordings of the jail phone calls, played for the jury, were additionally harmful as Petitioner said his money was in the pockets of his red pants.   Ex. H at 851.   He said, "[i]t's in the red pants I had on."   Id.

Even if counsel had objected to the evidence being introduced by the expert, the objection would have been overruled under these circumstances. Although Ms. Murphy-Baum did not do the cuttings, she performed the lab work, extracting the DNA and developing the profile.   As such, any objection would have been futile.   A defense attorney need not make a meritless motion or objection that would not have obtained relief.   Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019).

Petitioner cannot demonstrate that but for counsel's alleged error, the outcome of the proceeding would have been different.   The Court concludes

Petitioner's unexhausted claim of ineffective assistance of counsel is not substantial, and Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>.   As he has failed to demonstrate that his underlying claim of ineffective assistance of counsel is a substantial one, Petitioner simply does not meet the narrow exception set forth in <u>Martinez</u> and his default is not excused.

In short, the Court finds ground one is unexhausted and procedurally defaulted.   Furthermore, he has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground one.   In this case, Petitioner has not demonstrated he meets the allowable exceptions to the procedural default doctrine.   Having failed to establish cause for the procedural default of his first ground, the Court finds it to be procedurally barred and should not be addressed on its merits in this federal post-conviction proceeding.   Therefore, ground one is due to be denied as procedurally defaulted.

## VII.   GROUND TWO

**Ground Two:   ineffective assistance of trial counsel for failure to object to the admission of evidence without proper authentication.**

This claims is unexhausted and procedurally defaulted.   Petitioner has not shown cause for the default and prejudice from violation of federal law.

Petitioner relies on <u>Martinez</u> and asks that the default of ground two be excused pursuant to <u>Martinez</u>.   Consequently, this Court will undergo a merits analysis for ground two.

The second ground of the Petition is closely related to first ground.   In his Petition, Petitioner alleges failure of counsel "to have the Exhibits 7S through 7X authenticated by the analyst who conducted test on the exhibits demonstrates counsel was not functioning as counsel guaranteed by the 6th Amendment."   Petition at 6.   Again, Petitioner asserts Ms. Murphy-Baum did not "conduct any test" on the exhibits and reference sample.   <u>Id</u>. at 7.   Of course, that is not what she testified to in her video testimony.   She testified she did the lab work, except for the cutting of the cloth.   Indeed, Ms. Murphy-Baum attested she extracted the DNA from the cuttings, amplified the clean DNA sample, and generated the DNA profile.   Ex. G at 730.   Thus, the expert witness was the individual who extracted the DNA and obtained a profile.   Finally, she is the analyst who made the findings after performing her analysis.

Petitioner's defense counsel did not perform deficiently by failing to object to the admission of the evidence without proper authentication.   Ms. Murphy-Baum testified she was an expert in her field and she actually did the lab work which resulted in generating the DNA profile.   As noted by

17

Respondents, Mr. Murphy-Baum did not open the packages and cut the swabs, but she did the actual lab work on the samples.[4]   See Response at 32.   Another analyst cut the swabs from the samples in the packages.   Ex. G at 729.   Ms. Murphy-Baum took the cuttings, extracted the DNA, amplified it, and then generated a DNA profile.   She testified to her actions in the video testimony.

Of import, Ms. Murphy-Baum's testimony was not particularly helpful to the state in that Ms. Murphy-Baum testified there was no match.   Indeed, for the handgun, she obtained a mixture profile of three or more individuals, including at least one male contributor, and she could not exclude the victim or any of the defendants from a mixture profile, and for the shotgun, she testified there was a partial DNA profile that included a male contributor.   Id. at 727-30, 732-34, 736-37.   This was certainly not earth-shattering or even particularly damaging testimony.   Defense counsel effectively cross-examined

---

[4] If defense counsel had been concerned about obtaining the testimony of the analyst who cut the swabs, he could have objected during the course of the taking of the video-testimony or asked to obtain that analyst's testimony.   Apparently, defense counsel did not consider this a matter of significance since Ms. Murphy-Baum testified that the four reference samples, contained in four envelopes, were from the three defendants and the victim, and the expert could recognize them by the Bode sticker and case number on the items.   Ex. G at 727.   Mr. Rosati did not perform deficiently by failing to insist on obtaining testimony from the analyst who performed the cuttings as the samples were appropriately contained in marked envelopes with Bode stickers and the relevant case number.   Although for completeness it would have been considered appropriate to ask for the other analyst's testimony, it certainly did not impact the case based on the testimony of Ms. Murphy-Baum. Furthermore, there was no prejudice as the expert testified there was no match, testimony beneficial to the defense.

Ms. Murphy-Baum, hammering home the position she could not attest that she generated a DNA profile that was a match to Petitioner.   Id. at 736-37.

Apparently, Petitioner is claiming that counsel should have objected because the evidence was not sufficiently authenticated and should not have been considered by the trier of fact.   In Florida, authentication of evidence is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims."   Fla. Stat. § 90.901.   Indeed, "[e]vidence may be authenticated by appearance, content, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances." Walker v. Harley-Anderson, 301 So. 3d 299, 301-302 (Fla. 4th DCA 2020) (quoting Jackson v. State, 979 So. 2d 1153, 1154 (Fla. 5th DCA 2008)).   Here, of course, the expert testified that the samples were contained in marked envelopes, with the Bode stickers and case number.   For the purpose of admission, this was a sufficient showing that the proffered evidence was authentic as "authentication for the purpose of admission is a relatively low threshold" requiring only a *prima facie* showing.   Id. at 304 (quoting Mullens v. State, 197 So. 3d 16, 25 (Fla. 2016)).   Once a *prima facie* showing is made, the evidence comes in, and ultimately, the jury decides the question of authenticity.   Thompson v. State, 253 So. 3d 684, 688 (Fla. 1st DCA 2018) (per curiam) (citation omitted).

The court is not convinced that, under these circumstances, counsel's performance fell below an objective standard of reasonableness for failure to challenge the admission of the testimony without objection on grounds of lack of authentication. See Hills v. Crews, No. 3:12cv28/LAC/EMT, 2013 WL 4017331, at *11 (N.D. Fla. 2013) (not reported in F.Supp.2d) (finding failure to show deficient performance in regard to counsel's failure to challenge admission of a videotape based on lack of authentication). Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained under the circumstances presented as the expert testified as to the lab work she performed based on the samples she received that previously had been cut and marked with the Bode sticker and case number. Ex. G at 727. Of importance, under Strickland, the standard is reasonable performance, not perfection. Brewster, 913 F.3d at 1056 (citation omitted). In addition, Petitioner has failed to show a reasonable probability that the videotape testimony would have been excluded had counsel made such a challenge, or that the result of his trial would have been different, especially in light of the other evidence presented at trial, including the testimony of the victim and Jay Sowers.

Furthermore, in this instance, as the DNA evidence did not point to Petitioner, defense counsel reasonably could have wanted to eliminate all hurdles that may inhibit the testimony of the expert because the expert was going to testify that the state was unable to show a match.   Obtaining the testimony of the other analyst, the analyst that did the cutting but not the analysis, would have been insignificant testimony, at best.   Therefore, there was no prejudice.

The Court is not convinced that ground two has some merit.   As such, Petitioner has failed to show that the narrow exception recognized in <u>Martinez</u> is applicable.   Since Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception.   Therefore, he has failed to establish cause for the procedural default of his claim raised in ground two and his default is not excused.   In sum, the Court finds ground two procedurally barred and should not be addressed on its merits in this federal proceeding.

## VIII.   GROUND THREE

**Ground Three:   ineffective assistance of trial counsel for failure to object to the state's burden-shifting statement during closing argument.**

Petitioner concedes this claim is unexhausted and procedurally defaulted, but he relies on <u>Martinez</u> and asks that the default of ground three

be excused pursuant to <u>Martinez</u>.   Petition at 9.   As such, this Court will apply a merits analysis for ground three.

Petitioner claims his counsel performed deficiently for failure to object to testimony concerning consciousness of guilt, apparently contending that the prosecutor's closing statements equated to comments on Petitioner's state of mind, meaning the state argued to the jury that Petitioner should have proclaimed his innocence to the officers.   Petition at 8.   Petitioner complains of burden-shifting statements of the prosecutor which urged the jury to conclude that "Petitioner should have cooperated and proclaim[ed] his innocence to the officers."   <u>Id</u>.

The prosecutor, in closing argument, said the following:

> How about Mr. Johnson's consciousness of guilt, something you can consider in this case, something that you have?   It's in evidence because you heard from Officer Crosby of the Jacksonville Sheriff's Office that when they took Bernard Johnson out of Jay Sowers' home out, of the Sowers['] residence, he was pulling away from officers.   He was uncooperative. He began kicking the windows of the patrol vehicle to the point where they had to almost hobble-restrain this man.   Why?   Because he was guilty and he knew it.   He knew he was going to jail he knew he was going down for it.   That's why he resisted.

Ex. H at 898-99.

The prosecutor added:

> Mr. Johnson's consciousness of guilt. He covers the tag, wearing mask and gloves, to hide fingerprints, to hide DNA. The jail calls to his associates to not talk to anyone, to not cooperate. He's uncooperative with the police. Can you be uncooperative with the police? You can. You might get arrested for it. But that's further evidence that he's – that he has consciousness of guilt.

Id. at 958-59.

The record demonstrates the prosecutor was properly commenting on testimony in evidence. The trial record shows Detective Crosby testified that when Petitioner was being escorted to the police car, he was very uncooperative. Ex. G at 705. Detective Crosby described Petitioner as using profanity, pulling, and once placed in the car, kicking the door with his foot. Id. at 705-706. Detective Crosby said that Petitioner was getting so unruly that the officers had to warn Petitioner that if he did not stop kicking, the officers were going to have to hobble-restrain him, tying his hands and feet together to prevent damage to the car or harm to Petitioner. Id. at 706. Only then did Petitioner stop kicking. Id.

Kelley Rita and Jay Sowers testified the robbers were wearing masks and gloves. Ex. F at 415-16, 421, 428; Ex. G at 611. Leslie Nickels, a witness, testified that the black four-door car, backed up to the apartments, had a towel covering the license plate. Ex. G at 657. Petitioner, in his jail-house phone

23

conversation with an unknown male, told the person to speak to "Storm" and let him know not to talk to anybody.[5]   Ex. H at 826.

With regard to Petitioner's contention that the prosecutor shifted the burden of proof and counsel performed deficiently when he failed to object when the prosecutor argued defendant had consciousness of guilt, upon review, there was no improper burden shifting based on the prosecutor's argument. Of significance, the argument the prosecutor gave was merely an interpretation of the evidence presented at trial.   The prosecutor's comments were obviously based on the testimony offered by others.   The argument fell squarely within the arena of consciousness of guilt.   Since the prosecutor's comments in closing were logical inferences based on the testimony and evidence, there was no deficiency in counsel's performance in failing to object to the comments.

Furthermore, there is no reasonable probability that the outcome of the case would have been different if defense counsel had taken the action suggested by Petitioner.   Instead of making an objection during the prosecutor's closing argument, defense counsel effectively addressed the

---

5 Jay Sowers' nickname is Storm.   Ex. F at 480.

matter in his closing argument, skillfully attacking the state's argument.

Defense counsel began:

> Now, Officer Crosby told you when he was taking him in the car, he was uncooperative. Of course, he's uncooperative. Jay Sowers got home and he explained to him – is it reasonable to think Jay told him what happened the night before? He had a mad lick or whatever he possibly said to him?

Ex. H at 936-37.

After the prosecutor's objection to this argument was overruled, Mr. Rosati continued in this vein:

> And it's argument, ladies and gentlemen. This is what we believe the evidence shows, that when he told Bernard Johnson that morning, his reaction is freaking out. Used his car, his keys. Mr. Johnson didn't know anything. He would have cleaned his car out, correct? But there's a shotgun in the back and Jay's ski mask in the back.
>
> So when he's getting arrested for something he did not do, of course, he's uncooperative. Of course, he's upset. And he's mad at Jay Sowers because he's implicated him in this.

Id. at 937.

Under these circumstances, defense counsel was not deficient for failing to object to the comments of the prosecutor. To tackle the issue, Mr. Rosati took an effective approach, arguing that Petitioner was upset and unruly because he was being arrested and blamed for something he did not do and

25

was implicated by someone who was not telling the truth, Jay Sowers.   Ex. H at 921.

Prosecutors should refrain from making burden-shifting arguments implying the defendant has to present evidence or prove innocence.   United States v. Jackson, 300 F. App'x 869, 870 (11th Cir. 2008) (per curiam).   Upon review of the prosecutor's statements referenced in the Petition, the Court is not convinced that the state was making a burden-shifting argument.   To the extent the prosecutor's argument touched on burden-shifting, any prejudice was cured by the court's instruction regarding the burden of proof.   Id. (citing United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992)).

The court instructed:

> Bernard Johnson, the defendant in this case, has been accused of the crime of home-invasion robbery.   To prove the crime of home-invasion robbery, the State must prove the following three elements beyond a reasonable doubt:  One, Bernard Johnson entered the dwelling of Kelley M. Rita and/or Richard G. Rita; two, at the time Bernard Johnson entered the dwelling, he intended to commit robbery; three, while inside the dwelling, Bernard Johnson did commit robbery.

Ex. H at 961-62.   The court also instructed:

> If you find the defendant guilty of the crime of home-invasion robbery, then you must further determine beyond a reasonable doubt if in the course

26

> of committing the home-invasion robbery, the
> defendant carried some kind of weapon.

Id. at 962.   The court continued in this vein.   Id. at 962-63.

The Court finds, even if the prosecutor's comments could be interpreted as being improper, there was no prejudice because the court instructed the jury that the state had the burden of proving each element of the offense of home invasion robbery beyond a reasonable doubt, curing any improper suggestion of burden-shifting.   See United States v. Orellana, 341 F. App'x 501, 507 (11th Cir. 2009) (per curiam) (finding even if improper, remarks do not prejudice the defense if either the court's instructions or the government's explanation to the jury cured any prejudicial impact of the allegedly improper comment).

The court is not convinced that, under these circumstances, counsel's performance fell outside of the range of reasonably professional assistance. Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained under the circumstances presented as the comments do not amount to an improper burden-shifting argument but were proper comments on the evidence introduced at trial.   Finally, if there was a suggestion of burden-shifting, it was cured by the court's instructions to the jury.

The Court finds ground three does not have some merit.   As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in <u>Martinez</u> is inapplicable and does not excuse the procedural default of ground three.   In conclusion, Petitioner has failed to establish cause for the procedural default of his claim raised in ground three and his default is not excused.   Accordingly, ground three is procedurally barred and should not be addressed on its merits.

## IX.   GROUND FOUR

**Ground Four:   ineffective assistance of trial counsel for failure to accompany Petitioner to the presentence interview and advise Petitioner of its importance.**

Petitioner concedes ground four is unexhausted and procedurally defaulted, but he asks that this default be excused pursuant to <u>Martinez</u>. Petition at 11.   As such, the Court will apply a merits analysis for ground four.

Petitioner alleges that prior to his sentencing proceeding, he attended a presentence interview with H. K. Chandler, a Probation and Parole Officer. Petition at 10.   Petitioner states Mr. Rosati did not accompany Petitioner to this interview, nor did he inform Petitioner of its purpose and legal significance.   <u>Id</u>.   Petitioner complains that his counsel told Petitioner not to talk with the Department of Corrections concerning his case; therefore, Petitioner declined to be interviewed by the Officer.   <u>Id</u>.

28

The record contains a copy of the Pre-Sentence Investigation.   Ex. Q at

23-25.   In pertinent part it states:

> **Defendant's Statement**: On 12/22/10, contact with
> the defendant was made at the Pre-trial Detention
> Facility for the purpose of the Presentence
> Investigation interview.   The defendant told this
> officer that his attorney advised him not to talk to
> anyone about his case.   The defendant refused to be
> interviewed and related his attorney advised him not
> to talk with the Department of Corrections.

Ex. Q at 24.

Petitioner submits that had it not been for counsel's deficient

performance in failing to properly advise Petitioner of the legal significance of

the interview, Petitioner would have told the Officer about Petitioner's history

of drug use and bipolar disorder as well as his history of being abused and

running away.   Petition at 10.

At sentencing, Mr. Rosati asked to make a clarification.   Ex. C at 456.

Mr. Rosati explained, he had told Petitioner about reserving comment until the

sentencing hearing, and Petitioner interpreted that to mean that he should not

speak of the Officer.   Id.   Mr. Rosati asked the court not to hold that against

Petitioner.   Id.   Mr. Rosati noted that he rarely sees a comment from a

defendant, but he did not want the court to think Petitioner did not want to

cooperate.  Id. at 457.   The court responded, "I understand that Mr. ROSATI [sic].   I see more than one of these.   It's not unusual."  Id.

Regarding any failure of counsel to accompany Petitioner to the interview, it is clear that a presentence interview is not considered to be a critical stage of a criminal proceeding; therefore, a defendant is not entitled to have counsel present during the interview.   In Re Beverly, 342 So. 2d 481, 489 (Fla. 1977) is dispositive.   The presence of counsel at a presentence interview is not contemplated:

> [A] P.S.I. interview is a preliminary stage where no decision is or can be made which may result in a detrimental change to the condition of an already convicted defendant's liberty. The presence of counsel at this interview would unduly interfere with the evaluation of the defendant by the parole and probation commission. Further, a reading of Fla. R. Crim. P. 3.713 clearly indicates that the P.S.I. is non-adversary in nature and, therefore, does not necessitate or even contemplate the presence of counsel.

Porter v. State, 354 So. 2d 470, 471 (Fla. 3d DCA 1978).

Thus, since a presentence investigation interview is not a critical stage of a criminal proceeding, Petitioner's attorney would not have been permitted to attend.   Any motion to attend would have been denied; therefore, counsel, was not ineffective for failure to file a futile motion to accompany Petitioner to his presentence interview.

Mr. Rosati also made sure that the court was fully aware that Petitioner was not being obstinate or otherwise uncooperative when he declined to be interviewed.   Rather, counsel stated, Petitioner was relying on counsel's advice to reserve comment when he declined to be interviewed by the Officer. The record also shows the court did not hold Petitioner's failure to comment against him as the court explained it was not an unusual stance.

Of course, Petitioner had the opportunity to make comments to the court at sentencing.   Thus, he had the opportunity to present evidence concerning any history of drug abuse, mental disorder, or child abuse to the court prior to sentencing.   Petitioner did not testify at sentencing, but the defense called numerous witnesses to testify on Petitioner's behalf.   Ex. C at 18-31.

The Court concludes that counsel's performance was not deficient for failure to accompany Petitioner to a presentence interview.   Based on Florida law, counsel's attendance would not have been contemplated as the proceeding is not considered to be adversarial.   Additionally, counsel did not perform deficiently in instructing Petitioner to reserve comment until sentencing. Petitioner broadly construed this instruction and refused to speak to the Probation and Parole Officer.   Mr. Rosati adequately explained to the trial court why Petitioner had declined to be interviewed by the Officer.   The court, noting that a lack of comment by the defendant was not unusual, readily

accepted counsel's explanation, apparently not taking offense.   As such, there was no prejudice to Petitioner's case.

Notably, defense counsel called witnesses on Petitioner's behalf at sentencing and made an appeal for a less harsh sentence, between ten and twenty-five years, followed by a probationary term, "even the rest of his life." Ex. C at 474.   Mr. Rosati reminded the court that there was testimony at trial that alcohol and drugs were involved.   Id.   He also stated that Petitioner had a loving and supporting family, willing to give him continued support.   Id. at 475.   Mr. Rosati told the court Petitioner has a GED and a job waiting for him. Id.   Mr. Rosati noted Petitioner did not have an extensive violent record and pleaded with the Court to give Petitioner the opportunity to show that "he has been rehabilitated and can be a productive member of society."[6]   Id. at 475-76.

Thereafter, the court pronounced sentence:

> I have evaluated the credibility of the witnesses and for those loved ones of the defendant I certainly understand that you did nothing to cause any of this to happen.
>
> It is not your fault.   A jury found that everything that happened is the fault of the two men [Petitioner and co-defendant Joshua Martin] [7] appearing before me today.

---

[6] On cross-examination, Petitioner's brother, Jonathan Johnson, testified he knew his brother had been arrested before for burglaries and grant theft.   Ex. C at 452-53.

[7] Although co-defendant Martin took the stand, the court found Mr. Martin not credible, as

Ex. C at 483.

The court adjudicated Petitioner guilty and sentenced him to life in prison with a ten-year minimum mandatory term.  <u>Id</u>. at 484.  Of import, Petitioner's co-defendant, Mr. Martin, also received a sentence of life in prison with a ten-year minimum mandatory term for home invasion robbery.  <u>Id</u>. at 484-85.  The court sentenced Mr. Martin to a consecutive fifteen-year sentence for aggravated battery with a deadly weapon, a firearm, with a ten-year minimum mandatory term.  <u>Id</u>. at 485.

In failing to demonstrate Mr. Rosati's performance was deficient, Petitioner has failed to show the underlying claim of ineffective assistance of trial counsel has some merit.  Indeed, counsel's performance did not fall outside of the range of reasonably professional assistance.  Since Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within the narrow exception set forth in <u>Martinez</u>.  <u>See</u> <u>Clark v. Comm. Ala. Dep't of Corr.</u>, 988 F.3d 1326, 1330 (11th 2021) ("<u>Martinez</u> is of no help because [Petitioner] has not presented a 'substantial claim' that his trial counsel rendered ineffective assistance[.]")

_____

his testimony did not hold up on cross-examination.  Ex. C at 483-84.  Mr. Martin said Xanax, alcohol, and marijuana had an influence on the decisions he made on the day of the offense and then claimed he could not remember committing the offense.  <u>Id</u>. at 467-72.

In sum, the Court finds ground four does not have some merit.   As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in <u>Martinez</u> is inapplicable and does not excuse the procedural default of ground four. Thus, Petitioner has failed to establish cause for the procedural default of his claim raised in ground four and the Court finds his default is not excused. Accordingly, ground four is deemed procedurally barred and ultimately defaulted.

## X.   GROUND FIVE

**Ground Five:   ineffective assistance of trial counsel for failure to file a motion to sever Petitioner's case from his co-defendant.**

Petitioner raised this ground in his Third-Amended Motion for Post-Conviction Relief.   Ex. Q at 75-93.   Petitioner claimed, pre-trial, he asked counsel to move to sever his case from his co-defendant's [Mr. Martin] case, claiming the jury would not be able to make a fair determination of guilt or innocence if the cases were tried together and the weight of the evidence was against the co-defendant because he was identified by the victim.   <u>Id</u>. at 86. Petitioner relied on argument that the jury would not be able to distinguish the evidence relating to the acts, conduct, guilt, or innocence of each defendant and would not be able to apply the law intelligently, without confusion, in

making a fair determination of guilt or innocence.   Id.   He contends his counsel failed to investigate the matter and move to sever Petitioner's case from his co-defendant's case, where the evidence was stacked against co-defendant Martin.   Id. at 86-87.

The trial court employed the Strickland standard in denying Petitioner's post-conviction motion.   Ex. Q at 94-95.   The First District Court of Appeal (1st DCA) per curiam affirmed.   Ex. T.   The mandate issued on May 5, 2014. Ex. W.   As the state court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the court denied the claim based on Strickland.

Thus, this Court must ask whether the court unreasonably applied that principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts.   This Court is not convinced that there was an unreasonable application or an unreasonable determination of the facts.   An explanation follows.

The trial court opined, Petitioner "failed to establish that his attorney performed deficiently by failing to sever his trial from the trial of his co-defendant."   Ex. Q at 99.   The court, in making its decision, referenced Florida law finding severance is not deemed necessary if the evidence is presented so that the jury can distinguish the evidence relating to each

defendant's acts, conduct, and statements, and then, intelligently and without confusion, apply the law and make a determination as to whether the individual defendant is guilty or innocent.   <u>Id</u>. at 98-99.   In denying relief, the court concluded Petitioner failed to reference any actual confusion, and Petitioner's reliance on the fact that the jury heard negative evidence about Petitioner's co-defendant amounted to speculation about evidential impact on the jury, speculation insufficient to support post-conviction relief.   <u>Id</u>. at 99. Finding no deficient performance, the court denied relief on this ground.   The 1st DCA affirmed the trial court's decision.   Ex. T.

The record demonstrates there was no basis for the jury to be confused between Petitioner and his co-defendant, Joshua Martin.   The victim, Kelley Rita, described Petitioner as a black male, fairly tall, with a black ski mask and bright red nylon pants with pockets all down the side, a dark sweatshirt, and heavy leather boots.   Ex. F at 415.   She also attested that he carried a shotgun.   <u>Id</u>.   On the other hand, Ms. Rita described the co-defendant, Mr. Martin, as olive-skinned, shorter, smaller, with a slighter build.   <u>Id</u>. at 416. Ms. Rita said the co-defendant wore dark jeans and a dark sweatshirt, with an off-white torn sheet wrapped around his head.   <u>Id</u>.   She said this man had a small revolver.   <u>Id</u>.   She also said he had on very distinctive footwear: bright white shoes with bright green marking on the soles.   <u>Id</u>.

36

Ms. Rita testified that the black man, the taller man in the red pants, held the shotgun on her, while the olive-skinned man held a gun on her husband.[8]  Id. at 418.   Ms. Rita testified that the olive-skinned male appeared to be orchestrating the robbery.  Id. at 425.   Ms. Rita said at one point the olive-skinned male hit her in the head with the revolver.  Id. at 432. Afterwards, Ms. Rita picked the olive-skinned male out of a show-up, noting he wore the jeans and sneakers and had the same build.  Id. at 465.   Ms. Rita identified the olive-skinned male in the courtroom as well.  Id. at 465-66.   Ms. Rita was unable to identify anyone else in the show-up.  Id. at 466.

At some point during the course of the robbery, Ms. Rita saw a white male, Jay Sowers, carrying a television.  Id. at 421.   Ms. Rita testified she saw Sowers' face because he lifted his ski mask up and sat it on top of his head. Id.   Ms. Rita testified that the white male cut her with a knife.  Id. at 432-33. Ms. Rita picked Jay Sowers, the white male, through a photo-spread prior to trial.  Id. at 467.   Ms. Rita identified Jay Sowers, the white male, in the courtroom.  Id. at 443.   Ms. Rita testified she was unable to pick Mr. Johnson out of a photo-spread.  Id. at 472.

---

[8]  The other victim, Richard G. Rita, a former PGA Tour golf caddie, died prior to trial due to a terminal illness.   Ex. A at 153-54; Ex. D at 49; Ex. F at 411-12.

Jay Sowers pled guilty to home invasion robbery and no contest to aggravated battery and then testified against Petitioner and Mr. Martin.   Ex. G at 613-14.   At the time of trial of Petitioner's trial, Mr. Sowers had not been sentenced.   Id. at 614.   Mr. Sowers testified Petitioner had two guns, a .38 revolver and a shotgun.   Ex. F at 571.   Mr. Sowers testified that the three of them (Sowers, Martin, and Petitioner) left the apartment to go commit a robbery in Petitioner's black car with Petitioner driving.   Id. at 580-81.   Mr. Sowers attested they committed the robbery and Mr. Martin pistol-whipped Ms. Rita.   Id. at 591-98.   Mr. Sowers testified that after completing the robbery, Petitioner had the stolen Rolex watch.   Ex. G at 607.

Upon review, the jury was certainly able to distinguish the evidence relating to the acts, conduct, guilt, or innocence of each defendant.   Each participant in the robbery had a different skin tone (one black male, one olive-skinned male, and one white male), and each participant had a different weapon.   Ms. Rita described the black male as wearing unique red pants and carrying a shotgun;[9] Ms. Rita described the olive skinned male as having on very distinctive shoes and being armed with a revolver; and, finally, Ms. Rita

---

9 Leslie Nickels testified that at approximately 5:30 a.m., she saw a black male, holding something, wearing red slacks, running up the stairs to an apartment from a black car with its license plate covered.   Ex. G at 657-60.   In a recorded jail-house telephone conversation, Petitioner mentioned that the money, "It's in the red pants I had on."   Ex. H at 851.

described the white male, as carrying a knife and revealing his face during the course of the robbery.   Ms. Rita was able to identify the white male and the olive skinned male, but not the black male.

It was to Petitioner's benefit that Ms. Rita was unable to pick Petitioner out of the photo spread and was unable to identify him as a perpetrator of the crime.   Also, there was no fingerprint or DNA evidence matching Petitioner. Of course, there was a wealth of other evidence tying Petitioner to the crime, including the testimony of co-defendant Jay Sowers and other individuals, including William Nimley,[10] Austin Busbin, Billy Souza, and Matt Gallardo.

There is no evidence of jury confusion.   The record demonstrates that the evidence was presented in such a way that the jury for Petitioner's case could distinguish the evidence relating to each defendant's acts, conduct, and statements.   Jay Sowers, the white male, pled guilty to home invasion robbery and no contest to aggravated battery and the jury was apprised of that fact.[11] Ex. B at 369-70; Ex. G at 624.   The jury found Petitioner guilty of home invasion robbery and that he actually possessed a firearm during the

---

[10] Mr. Nimley attested Petitioner wanted to join Josh Martin in hitting a lick (committing a robbery) and Petitioner left the apartment with Martin and Jay Sowers.

[11] Ms. Rita testified that the white male, Mr. Sowers, had a knife, he scraped her leg with the knife and then the knife went into the phone book.   Ex. F at 432-33, 454.

commission of the offense.   Ex. A at 157-58.   A separate jury found Mr. Martin, the olive-skinned male, guilty of home invasion robbery and aggravated battery.[12]   Ex. E at 376; Ex. H at 807-808.

Although Mr. Rosati did not seek to sever the two cases, Mr. Rosati's performance was well within the broad range of reasonable assistance under prevailing professional norms.   The evidence presented against each defendant was clear and distinct.   There was no confusion as to what actions each participant undertook during the commission of the robbery.   Each perpetrator carried a different weapon and there was one white male, one black male, and one olive-skinned male involved in the home invasion robbery. Although defense counsel could have filed a motion to sever, such omissions are inevitable and not constitutionally compelled.   See Kuhns, 2011 WL 1085013, at *6.   It is not likely the motion to sever would have been granted under these circumstances as severance was not necessary.

Without satisfying the performance prong of Strickland, Petitioner failed to obtain post-conviction relief.   Raheem, 2021 WL 1605939, at *6 (citation omitted) (failure to meet either prong is fatal to the claim).   The 1st DCA

---

12 Ms. Rita testified the olive-skinned male whom she identified as Mr. Martin hit her on the head with the revolver, causing injury.   Ex. F at 432.   Jay Sowers testified that Mr. Martin pistol-whipped Ms. Rita, hitting her on the face and knocking her to the ground. Ex. F at 598.

affirmed.   Ex. T.   The Court finds the state court's determination is consistent with federal precedent.   Petitioner failed to satisfy the performance prong of <u>Strickland</u>.   The 1st DCA's decision, although unexplained, is entitled to AEDPA   deference.   Applying the look-through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

In conclusion, the Court finds the state court's adjudication of the claim raised in the fifth ground is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground five is due to be denied.

## XI.   GROUND SIX

**Ground Six:   ineffective assistance of trial counsel for misadvising Petitioner regarding the state's ability to elaborate on Petitioner's prior felony conviction, undermining Petitioner's right to testify.**

In this ground, Petitioner complains his counsel gave Petitioner "erroneous and misleading information concerning the State's ability to elaborate on the details of his prior convictions."[13]   Petition at 13.   Petitioner states his counsel, unsure as to the exact number of Petitioner's prior convictions, advised Petitioner not to take the stand.   <u>Id</u>.   Petitioner told

---

13  Petitioner apparently believed he had prior felony convictions, as reflected in his post-conviction motion and his current Petition.

counsel that he had only three burglaries, one grand theft, and one possession of controlled substance in his felony background.   <u>Id</u>.   Petitioner contends his counsel did not advise him that if he took the stand, the state could not elaborate on the details of the prior burglaries.   <u>Id</u>.   Petitioner states counsel affirmatively told Petitioner the jury would hear the details of the prior burglaries.   <u>Id</u>.   Petitioner alleges he wanted to testify to rebut the allegations of Jay Sowers.   <u>Id</u>.   Petitioner asserts his testimony would have placed the case in a different light, warranting an acquittal.   <u>Id</u>.   He submits his counsel's lack of preparation and failure to investigate the charges prejudiced the defense, resulting in the denial of Petitioner's right to testify. <u>Id</u>.

Petitioner asserts he raised this claim in his Rule 3.850 and exhausted his state court remedies.   Petition at 14-15.   In ground one of the Third-Amended Motion for Post-Conviction Relief (Motion), Petitioner claimed his attorney was ineffective for advising him not to testify based on the mistaken belief that the Defendant's criminal background would have exposed him to unfavorable questioning by the state.   Ex. Q at 95.   Petitioner proposed two questions for consideration:   (1) did the defendant voluntarily agree with counsel not to take the stand, and (2) whether counsel's advice to defendant, even if voluntarily followed, was nevertheless deficient because no reasonable

attorney would have discouraged the defendant from testifying (citation and quotation omitted).   Id.   Petitioner conceded that he voluntarily agreed not to testify on his own behalf.   Id.

Rule 3.850 requires that a defendant file his postconviction motion under oath and penalty of perjury "that all the facts alleged are true."   Spera v. State, 971 So. 2d 754, 762 (Fla. 2007) (citing Fla. R. Crim. P. 3.850(c)). Petitioner's original Motion for Post Conviction Relief and the Third-Amended Motion for Post-Conviction Relief are sworn under penalty of perjury.   Ex. Q. Under Florida law, "[t]he defendant must be able to affirmatively say that his allegation is true and correct."   Eugene v. Jones, No. 4:14cv307-MW/CAS, 2016 WL 7015708, at *4 (N.D. Fla. Oct. 31, 2016) (not reported in F. Supp.) (quoting Scott v. State, 464 So. 2d 1171, 1171 (Fla. 1985)), amended order accepting report and recommendation, 2016 WL 7033187 (N.D. Fla. Dec. 1, 2016).   It is quite apparent that in making its ruling, the post-conviction court relied on Petitioner's contention that, at the time of trial, he had five felonies, including three convictions for burglary, one conviction for grand theft, and one conviction for possession of a controlled substance.

The Court will closely review the claim presented to the state trial court in the Motion.   Ex. Q at 77-80.   In ground one of the Motion, Petitioner claimed counsel rendered ineffective assistance when he misadvised Petitioner

regarding the state's ability to elaborate on Petitioner's prior felony convictions, undermining Petitioner's right to testify.  <u>Id</u>. at 77.  Petitioner asserts his counsel misadvised him concerning the state's ability to elaborate on the details of his prior convictions.  <u>Id</u>.  Petitioner also alleges his counsel was unsure as to the exact number of Petitioner's prior convictions and advised him it would be in his best interest not to take the stand.  <u>Id</u>.  Petitioner said he assured his counsel, "he only had (3) burglarys [sic], a grand theft and a possession of controlled substance in his felony back-ground."  <u>Id</u>.  Petitioner asserts counsel advised that if Petitioner took the stand, the state could elaborate on the details of the prior burglaries.  <u>Id</u>.  Petitioner alleges defense counsel feared that if the jury heard the details of the prior burglaries and they were consistent with the present charges, the jury would be convinced Petitioner committed the charged offense.  <u>Id</u>. at 77-78.

Petitioner argued that Florida law provides that the state attorney can only bring out the number of prior felony convictions if the defendant misrepresents the number of convictions and may not elaborate on the details of the prior convictions.  <u>Id</u>.  Petitioner claimed he wanted to testify to rebut Jay Sowers' testimony.  <u>Id</u>.  Petitioner contends, had he been properly advised, he would have testified that he did not participate in the home invasion robbery.  <u>Id</u>. at 78-79.  He states, had he testified, it "would have

formed the basis for an acquittal of the charged offense and may have supported a finding of guilt as to accessory after the fact." Id. at 79.

Petitioner alleges counsel failed to investigate Petitioner's background prior to trial and then failed to properly advise Petitioner. Id. Petitioner blames the alleged inadequacies of counsel for depriving Petitioner of his right to testify. Id. at 79-80.

In pertinent part, the trial court ruled:

> However, as in Hayes,[14] the question remains whether the Defendant's waiver was based on counsel's unreasonable advice.   Here, according to the Amended Motion, the Defendant's counsel sought to avoid presenting the jury with the number and nature of the Defendant's prior felonies.   See Hall v. State, 10 So. 3d 170, 171-172 (Fla. 5th DCA 2009) (confirming attorney's advice on harm of prior felony record).   The Defendant claims that, at the time of his trial, he had been convicted of five (5) felonies, including three (3) convictions for Burglary, one (1) conviction for Grand Theft, and one (1) conviction for Possession of a Controlled Substance.   Under these circumstances, it would not be unreasonable for the Defendant's counsel to discourage the Defendant from testifying on his own behalf to avoid potentially damaging impeachment by the State.   Based on his attorney's assessment, the Defendant chose a strategy of requiring the State to prove the elements of its case.   (Ex. C, p. 865).   "[A]n evidentiary hearing is not required when it is obvious from the record that counsel's decision was strategic." Jackson v. State, 975 So. 2d 485, 486 (Fla. 2nd DCA 2007) (citing State v. Williams, 797 So. 2d 1235, 1239

---

14 Hayes v. State, 79 So. 3d 230 (Fla. 2nd DCA 2012).

> (Fla. 2001)).   The Defendant has not established a
> deficient performance by his attorney in advising him
> not to testify at trial.   Relief is denied.   <u>Reaves</u>, 593
> So. 2d at 1151.[15]

Ex. Q at 95-96.

Petitioner appealed the denial of his post-conviction motion.   Ex. R; Ex.

S.   The 1st DCA affirmed.   Ex. T.

The right to testify is "located" in the Due Process Clause of the

Fourteenth Amendment and the Compulsory Process Clause of the Sixth

Amendment and is corollary to the Fifth Amendment's guarantee against

compelled testimony.   <u>Lott v. State</u>, 931 So. 2d 807, 817-18 (Fla. 2006) (per

curiam) (citing <u>Rock v. Arkansas</u>, 483 U.S. 44, 51-52 (1987)).   A criminal

defendant makes the fundamental decision as to whether to testify in his own

behalf.   <u>Id</u>. at 817 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)).

Petitioner does not dispute that he voluntarily agreed not to testify on

his own behalf.   His colloquy with the trial court supports this conclusion.

The record shows counsel told the court he was not presenting a case and

Petitioner did not plan to testify.   Ex. H at 858-59.   After the state rested, the

court conducted a colloquy with Petitioner concerning his right to testify.   <u>Id</u>.

at 862-65.   Petitioner told the court he decided not to testify based on the fact

---

15 <u>Reaves v. State</u>, 593 So. 2d 1150 (Fla. 1st DCA 1992).

he does not have to prove anything, and the state has to prove its case.   Id. at 865.

A post-conviction court, when addressing a claim of ineffective assistance of counsel, should look to counsel's conversations with the defendant in order to make a proper assessment of counsel's investigation decisions.   Strickland, 466 U.S. at 691.   Petitioner believed he had five felonies in his criminal background, including three felonies for burglary, one for grand theft, and one for possession of a controlled substance.   He told his counsel as much.   See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").   Indeed, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."   Id.   Thus, "what investigation decisions are reasonable depends critically on such information."   Id.   Also, in considering a claim of ineffective assistance of counsel, the reviewing court must apply a heavy measure of deference to counsel's judgments, including whether counsel makes a reasonable decision that a particular investigation is unnecessary based on the information received from his client.   Id.   In this case, not only was counsel told by Petitioner that he was felony offender, Petitioner specifically stated he had several burglary offenses in his criminal background.

47

As noted by the post-conviction court, after being told this information by his client, a reasonable attorney would have discouraged the defendant from taking the stand preventing the jury from hearing the defendant is a convicted felon.   Considering Petitioner's statement to counsel that he had an extensive criminal record and based on the previous statements he made in the recorded jail phone calls, a reasonable attorney would have discouraged Petitioner from taking the stand as his testimony would be impeachable.   In denying post-conviction relief, the trial court reasoned that it would not be unreasonable for defense counsel to discourage Petitioner from testifying to avoid potentially damaging impeachment about prior burglaries.   Also, importantly, the defense decided not to put on a case and chose a strategy of requiring the state to prove the elements of its case.

The trial court found counsel acted within the range of prevailing professional standards.   Finding Petitioner failed to satisfy the first prong under <u>Strickland</u>, the performance prong, the court denied relief.   Ex. Q at 96. The 1st DCA affirmed.   Ex. T.   Without satisfying the performance component, Petitioner cannot prevail on his claim of ineffective assistance of counsel.

Petitioner appealed the denial of his Rule 3.850 motion.   Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in

denying the motion.   The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.   Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny.   Moreover, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   As such, ground six is due to be denied.

In the alternative, the Court declines to give deference to the state court decision.   The record presents some matters of grave concern for the Court. Petitioner said he told his counsel, and then apprised the trial court in his Motion, he had five felonies in his criminal history background:   three for burglary, one for grand theft, and one for possession of a controlled substance. The trial court utilized the two-pronged Strickland standard in addressing Petitioner's Motion; therefore, its ruling was not contrary to Strickland.   The post-conviction court summarily accepted Petitioner's description of his felony criminal history, and apparently, as suggested by Petitioner, so did defense counsel.

Of importance, Petitioner also claimed his counsel failed to investigate his criminal history although counsel was unsure of the exact number of Petitioner's prior convictions.   The post-conviction court did not conduct an

evidentiary hearing concerning the claim of failure to investigate.   The crux of the problem is Petitioner's assessment of his prior criminal history was not entirely accurate as none of these prior felony offenses constituted prior convictions for impeachment purposes.   The record shows, in part, the trial court based its decision denying post-conviction relief on the fact that Petitioner and his defense counsel made a strategic decision to require the state to prove the elements of its case rather than the defense putting on a case.   What concerns this Court, is that this strategy may have been selected without an accurate assessment of Petitioner's criminal history based on either counsel's non-comprehensive investigation into Petitioner's criminal history or counsel's complete acceptance of Petitioner's statement concerning his criminal history without undertaking an independent review of Petitioner's criminal record and making an assessment as to whether Petitioner's previous offenses could be used for impeachment purposes.   Again, Petitioner alleges his counsel was unsure as to the exact number of Petitioner's prior convictions.

After a thorough review of the record, the Court concludes that Petitioner had no prior felonies that could be used for impeachment purposes. Indeed, Petitioner had no prior felony convictions whatsoever.   At most, he had a 2008 misdemeanor conviction for giving a false name or identification to a police officer for which he pled no contest and was adjudicated guilty and

sentenced to twelve days in jail with twelve days credit.   Ex. Q at 25; Ex. Z at 393.

Petitioner's Criminal Punishment Code Scoresheet shows one prior felony conviction for possession of cannabis with intent to sell, purchase, manufacture, or deliver.   Ex. Z at 393-94.   The Pre-Sentence Investigation[16] shows Petitioner pled guilty, but adjudication was withheld, and Petitioner received four months unsupervised probation and four months jail, with 65 days credit in case no. 16-2009-CF-008552 (Duval County).[17]   Ex. Q at 25. The state court record shows Petitioner pled guilty on August 31, 2009, the court withheld the adjudication of guilt and placed Petitioner on four months unsupervised probation with special conditions to serve four months Duval County Jail with 65 days credit.[18]

Nevertheless, a defendant cannot be impeached by a guilty plea where adjudication has been withheld.   State v. McFadden, 772 So. 2d 1209, 1212

---

16 At sentencing, Mr. Rosati made one clarification regarding the Pre-Sentence Investigation, but he did not claim "any errors" or make corrections to Petitioner's criminal history.   Ex. C at 456-57.

17 The Court takes judicial notice of case no. 16-2009-CF-008552 (In the Circuit Court, Fourth Judicial Circuit, In and for Duval County, Florida).

18 The issue of whether this felony for which adjudication was withheld should have appeared on the Scoresheet is not before this Court.   That is a matter left to state court interpretation of state law and may be dependent upon whether Petitioner fulfilled all conditions.   However, based on the state court record, Petitioner has not been adjudicated guilty of this offense.   See case no. 16-2009-CF-008552 (Duval County).

(Fla. 2000).   In fact, a plea of guilty without an adjudication of guilt does not constitute a prior conviction for purposes of impeachment under the Florida Evidence Code.   Id. at 1216 ("Therefore, until the time that adjudication occurs and a judgment of conviction is entered, a defendant . . . is not subject to impeachment pursuant to section 90.610(1) of the Evidence Code."). See State v. Jouzdani, 98 So. 3d 1264, 1268 (Fla. 1st DCA 2012) ("It is not enough to show that the witness was found guilty by a jury or that he or she entered a plea of guilty.   The court may have withheld adjudication of guilt and in that event the resulting order would not qualify as a conviction.").   Thus, it would be error to allow the state to impeach the witness without an adjudication of guilt.   Id. at 1269.   As such, the state could not have used the felony of possession of cannabis with intent to sell, purchase, manufacture, or deliver for impeachment purposes at Petitioner's trial.

The remaining question is whether Petitioner had other felony convictions that could be used for impeachment purposes. Pacifico v. State, 642 So. 2d 1178, 1183 (Fla. 1st DCA 1994) (per curiam) ("a prosecutor may use a defendant's prior conviction as an impeachment tool").   Petitioner states he assured his counsel that he only had three burglaries, a grand theft, and a possession of controlled substance in his felony back-ground.   The possession offense, addressed above, would not have been available for impeachment

purposes.   Notably, there is no mention of three burglaries and grand theft on the Scoresheet, signifying there were no prior felony convictions for burglary or grand theft.   The Pre-Sentence Investigation provides the following pertinent criminal history:   pretrial interventions with normal terminations for case no. 2008-41CF (St. Johns County), burglary of a structure (5/9/08 1 year Pretrial Intervention, 5/18/09 Normal Termination); case no. 2008-42CF (St. Johns County), grand theft (same); case no. 2008-44CF (St. Johns County), burglary of a structure (same); and case no. 2008-45CF (St. Johns County), burglary of a structure (same).   Ex. Q at 24-25.   Petitioner attached a copy of the Pre-Sentence Investigation as Exhibit A to his initial Motion for Post Conviction Relief, filed May 23, 2012, pursuant to the mailbox rule.[19]   Ex. Q at 22-25.

The home invasion robbery did not occur until December 31, 2009, long after Petitioner completed his pretrial intervention program; therefore, there was no possibility at the time of trial that the charges against Petitioner might be reactivated.   See West v. Florida, 503 So. 2d 435, 436 (Fla. 4th DCA 1987) (since the witness had completed the pretrial intervention program prior to trial, and no possibility that the charges might be reactivated, the pretrial

---

[19] Although Petitioner did not attach a copy of the document to his Third-Amended Motion for Post-Conviction Relief, the document was contained in the state post-conviction record as an attachment to the initial sworn motion for post-conviction relief.

intervention program had no bearing on his credibility). Since Petitioner completed a pretrial intervention program, "adjudication of guilt would have been withheld." See Pacifico, 642 So. 2d at 1181 n.2 (noting same). As such, the state could not have used the three burglary offenses and the grand theft offense for impeachment purposes.

As there was no evidentiary hearing in the state court, the post-conviction court did not make any factual findings as to whether defense counsel conducted an adequate investigation into Petitioner's criminal history. Based on Petitioner's criminal history, there is grave doubt as to whether counsel provided Petitioner with reasonably effective advice concerning the use of the felonies for impeachment purposes. It appears that counsel and the post-conviction court accepted Petitioner's statements concerning his criminal history at face value. Assuming arguendo counsel undertook some investigation into Petitioner's criminal history, it would be an improper assessment on counsel's part to conclude that the state could use any of these offenses for impeachment purposes because there was no adjudication of guilt for any of these felony offenses. In short, Petitioner, at the time of trial, had no prior felony convictions that could be used for impeachment purposes and any advice not to testify based on fear of impeachment based on prior felony convictions would have been unreasonable.

This leaves the Court with a most difficult conundrum.   Although the post-conviction court found counsel did not perform deficiently, it appears Mr. Rosati may have done so concerning any advice he gave to Petitioner to discourage the Petitioner from testifying on his own behalf to avoid potentially damaging impeachment by the state by utilizing prior felony convictions.   Of course, this Court does not have before it more than Petitioner's allegation that counsel gave him this advice, without evidentiary support.[20]   Giving the post-conviction court the benefit of the doubt, it apparently relied on Petitioner's assessment of his prior felony offenses to make its decision,[21] and the court also relied on other factors, like the stated strategy of the defense to make the state prove its case.   Ex. Q at 96.   See Ex. H at 865 (Petitioner tells the court he does not want to testify, "[b]ecause the State has to prove their case.   I don't have to prove anything.").

Upon review, there is not competent, substantial evidence to support the post-conviction court's conclusion that Petitioner had five prior felonies and counsel's advice concerning impeachment based on Petitioner's criminal history was reasonable based on his criminal history.   As a consequence, in the alternative, this Court will not give deference to the state court's decision

---

20  The state post-conviction court did not conduct an evidentiary hearing.

21  Again, Petitioner presented his criminal history in his sworn post-conviction motions.

to the extent the state court held it would not be unreasonable for counsel to discourage the defendant from testifying to avoid potentially damaging impeachment based on five prior felonies.

However, the Court still finds Petitioner is not entitled to habeas relief. An explanation follows.  The Court is not convinced there is a reasonable probability Petitioner would have prevailed at trial had he not been deceived by counsel's alleged erroneous advice.  If not absolutely overwhelming, the evidence against Petitioner was quite substantial.  Although there was no fingerprint evidence or DNA evidence tying Petitioner to the crime or identification by the victim, there was a wealth of other evidence, including the very detailed testimony of the victim, describing the black male as wearing red pants and carrying the shotgun; Petitioner's jailhouse phone call, played for the jury, asking someone to look in the pockets of his red pants, that he had worn; the content of numerous jailhouse phone calls; the testimony of other witnesses about Petitioner planning to hit a lick with co-defendant Martin, testimony concerning Petitioner departing the apartment with co-defendants Martin and Sowers, and returning to the apartment after their absence with numerous stolen items, including Petitioner carrying a big black television; the testimony of a witness that a black male was observed running up the stairs

from the car, carrying something, wearing red pants; and the testimony of an officer that the shotgun and a mask were found in Petitioner's car.

In addition, Petitioner's co-defendant, Jay Sowers, provided detailed testimony that Petitioner participated in the home invasion robbery. Moreover, Sowers' testimony and the description of Petitioner's actions during the course of the robbery aligned with that of the victim, except Sowers testified Petitioner wore black pants.[22]   Finally, trial testimony revealed that after the robbery, Petitioner was in possession of the stolen Rolex watch and the police found the distinctive watch in Petitioner's room.   Ex. G at 607, 762.

In Richter, 562 U.S. at 104, the Supreme Court, relying on Strickland, opined:

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

---

22 Unlike the victim, Jay Sowers attested that Petitioner wore all black during the home invasion robbery (black pants with a black long-sleeved T-shirt).   Ex. G at 635.   During the jailhouse phone call, Petitioner asked someone to look for money in the pockets of his red pants: "It's in the red pants I had on."   Ex. H at 851.   Again, the victim testified that the black male perpetrator wore red pants.

This Court concludes there is no reasonable probability of acquittal had Petitioner testified.  Of import, his testimony would have been impeached through the statements he made during the jailhouse phone calls.  Even if Petitioner had testified that he was, at most, an accessory after the fact, the evidence presented at trial did not support the conclusion that he played a limited role in the offense, after the fact.  Indeed, the evidence presented supported the jury's conclusion that Petitioner was a major participant in the home invasion robbery.  There was evidence that he agreed to participate in the robbery after some discussion, he left the apartment with the other two participants in the robbery after this discussion, Petitioner used his car in the course of the robbery, he played a distinct part in the home invasion robbery (carrying the shotgun later found by the police in Petitioner's car), he returned to the apartment carrying items stolen from the victim's house, and was seen with the unique stolen watch.  Based on the above, Petitioner's evidence of prejudice falls below the Strickland standard.  "The likelihood of a different result must be substantial, not just conceivable."  Richter, 562 U.S. at 693.  In Petitioner's case, the likelihood of a different result is certainly not substantial.  It is barely conceivable.  As such, Petitioner is not entitled to habeas relief and ground six is due to be denied.

# XII.   GROUND SEVEN

**Ground Seven:   ineffective assistance of appellate counsel for failure to raise a claim concerning the denial of Petitioner's motion to suppress.**

Concerning the question of exhaustion, Petitioner exhausted his state court remedies by raising this ground in a state petition for writ of habeas corpus.   Ex. N.   The 1st DCA denied the petition.   Ex. O.   The 1st DCA also denied rehearing.   Ex. P.

The record shows the following.   Petitioner's trial counsel filed a Motion to Suppress Physical Evidence and Statements.   Ex. A at 46-49.   The court conducted a suppression hearing.   Ex. I at 70-140.   On the record and in a written order, the court denied the motion.   Ex. A at 55-62.   Steve Sowers, the owner of the house, signed a Consent to Search.   Id. at 62.

At the suppression hearing, Detective Christopher P. Crosby attested he was an experienced police officer, riding patrol, working on a street task force, assigned to the State Attorney's Office as an investigator, working in gun and traffic homicide units, and internal affairs.   Ex. I at 76-77.   He also testified he was a hostage negotiator and part of the SWAT team.   Id. at 77-78.   He explained that when law enforcement officers are informed that possibly armed suspects are in a house, particularly when investigating a violent crime, certain precautions are taken to ensure the safety of the officers, bystanders,

and those in the home.  Id. at 77-78, 81-82.  Of import, the officers saw a shotgun, in plain view, in a black Ford Taurus, a vehicle described as being involved in the robbery and home invasion.  Id. at 79.

Detective Crosby testified that, after he knocked on the kitchen door of the house, Janice Sowers, the mother of co-defendant Jay Sowers, answered the door.  Id. at 80.  When asked if her son was home, Ms. Sowers told the police her son was home.  Id. at 81.  Detective Crosby asked Ms. Sowers to exit the house, and she did so with her grandbaby.  Id. at 81-82.  Afterwards, Detective Crosby called out for Storm, or Jay Sowers.  Id. at 82.  Jay Sowers came to the door and was then taken into custody without the officers entering the house.  Id. at 83.  The officers then called for Bernard Johnson to come out of the house.  Id. at 83-84.  When Petitioner stepped out into the garage or carport, he was arrested.  Id. at 85.

Steve Sowers, Jay Sowers' father, arrived and signed a consent to search the residence.  Id. at 86.  Detective Crosby testified he did not enter the house prior to getting a signed consent to search, and he recollected that the other officers did not enter until they had received the signed consent to search.  Id. at 87.  After receiving consent from Mr. Sowers, three officers entered the house.  Id. at 90.  Detective Crosby said Ms. Sowers never gave him permission to enter the house.  Id. at 91.

Janice Sowers testified the officers entered the house after Mrs. Sowers pointed towards Jay's room.  <u>Id</u>. at 98.   Mrs. Sowers did not recall signing a consent to search.  <u>Id</u>. at 100.   The officers asked where BJ was, and Mrs. Sowers did not know anyone by that name.  <u>Id</u>. at 101.   When Mrs. Sowers realized the officers were talking about Bernard Johnson, she pointed towards a bedroom in the house.  <u>Id</u>.   She testified the officers went into the house and brought Petitioner out.  <u>Id</u>.   Mrs. Sowers said she did not give the officers permission to go into the house.  <u>Id</u>.   On cross-examination, Mrs. Sowers testified she had full access to her daughter's room, the room where Petitioner stayed.  <u>Id</u>. at 103-104.   Mrs. Sowers never told the officers not to go into the house.  <u>Id</u>. at 106.

Steve Sowers testified that when he arrived, Jay Sowers was not at the house and Petitioner was already out of the house and the police were taking him to a police car.  <u>Id</u>. at 110.   Mr. Sowers testified he decided to allow the police to search the house.  <u>Id</u>. at 111.   Mr. Sowers testified Detective Crosby said the police had already been inside the house when they arrested Jay and Bernard and the police saw a weapon inside the house.  <u>Id</u>. at 111-12.   Mr. Sowers signed a consent to search form on the condition he could go in the house with the police.  <u>Id</u>. at 113.   On cross examination, Mr. Sowers said he had access to his daughter's room where his daughter and Bernard stayed,

along with the grandson.   Id. at 116.   Mr. Sowers said he consented to the search because he believed the police were going to get a warrant anyway and he was also upset about a weapon being in the house.   Id. at 119.

The state informed the court there was no claim that there were exigent circumstances.   Id. at 120.   The state confirmed it was not claiming hot pursuit.   Id.   The defense claimed there was a search prior to consent.   Id.

After argument, the court denied the motion to suppress.   Id. at 131. The court made findings of fact.   The court found Mr. Sowers, who had common authority over the house, gave consent to search the house.   Id. at 132-133.   The court found Detective Crosby's testimony more credible.   Id. He testified that the suspects were arrested outside the home and then written consent was obtained prior to the search of the home.   Id.   The court found the officer's testimony more believable considering safety protocols.   Id.   The court found that neither of the Sowers had the opportunity "to observe any officers entering prior to the execution of the consent by Mr. Sowers."   Id. at 135.   The court noted that Ms. Sowers was escorted away from the area when she came out of the house so she would not have the ability to see whether the officers entered the house.   Id.

The court accepted the state's argument there was implied consent by Ms. Sowers, but the court said the real basis for its decision was the credibility

finding.  Id.  In particular, the court relied on Detective Crosby's account as he had considerable law enforcement experience, including SWAT units and the office of internal affairs.  Id. at 136.  Finding Detective Crosby's testimony more credible than the Sowers, the court denied the motion to suppress.  Id.

Petitioner contends there is a reasonable probability that the result of the appeal would have been different if appellate counsel had raised this claim on direct appeal.  Petition at 16.  This Court is not convinced that would be the case.  As noted previously, the 1st DCA denied Petitioner's claim alleging ineffective assistance of appellate counsel for failure to raise this issue, signifying the unlikelihood of prevailing on the underlying claim.  Ex. N; Ex. O.  Moreover, "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)), cert. denied, 568 U.S. 849 (2012).  Since the trial court observed Detective Crosby's testimony and the testimony of the Sowers and found Detective Crosby's testimony more credible, this Court will not make a redetermination concerning Detective Crosby's credibility compared to the Sowers.

If Detective Crosby's testimony is credited, the motion to suppress was properly denied.   He attested that the police did not enter the house until the written consent to search had been obtained from Mr. Sowers.   Detective Crosby also attested that safety protocols were followed, particularly since police had been informed there was an armed home invasion robbery, the shotgun was observed in the car outside the home, and the suspects were likely in the home and may be armed.   As such, Petitioner is not entitled to relief on this claim of ineffective assistance of appellate counsel for failure to raise a claim concerning the denial of the motion to suppress.   "Because an appeal of a suppression issue would not have properly been successful, appellate counsel could not have been ineffective for failing to raise it."   Response at 58.

The Court finds the 1st DCA's determination is consistent with federal precedent.   As such, the state court's decision is entitled to AEDPA deference. Ex. O.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In short, the state court's adjudication of the claim of ineffective assistance of appellate counsel is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Therefore, the state court's decision is entitled to deference and ground seven is due to be denied.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his appellate counsel ineffective.   <u>See</u> Petition at 16.   Thus, he has failed to demonstrate Sixth or Fourteenth Amendment violations or any constitutional violation.   Ground seven, the claim of ineffective assistance of appellate counsel, is denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**. [23] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

---

[23] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

motion to proceed on appeal as a pauper that may be filed in this case.   Such

termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 15th day of June,

2021.


                       _____

                          BRIAN J. DAVIS
                    United States District Judge



sa 6/11
c:
Bernard Johnson
Counsel of Record